Turley, J.
delivered the opinion of the court.
This action is brought to recover damages upon a policy of insurance, effected by the plaintiffs with the defendant, for a loss sustained upon cargo by reason of theft. The risks taken by the insurance company, as expressed in the policy, are of the rivers, seas, men of war, fires, enemies, pirates, rovers, thieves, &c. The declaration avers that the goods lost, “were stolen by the thieves from on board the boat employed in the transportation of the goods insured, and by persons unconnected with said boats.” To this declaration there is a demurrer; and the only question is, whether this averment is good and sufficient in law to charge the in-, surance company. The question is resolved into what shall be held to be the meaning of the word thieves, as contained in the policy of insurance. On the one hand it is contended, that the theft insured against is that which is accompanied by violence, more strongly- expressed by the Latin word lalrocinium, robbery; and on the other hand, that it is a simple larceny, expressed by the Latin word furlum, a theft committed quietly and secretly.
This is a question at the present day not to be reasoned about, as we think it depends entirely upon authority. Chancellor Kent, in the 3d volume of his Commentaries, sayst “The enumerated perils of the sea, pirates, rovers, thieves, include the wrongful and violent acts of individuals, whether in the open character of felons or in the character of a mob or as a mutinous crew or the plunderers of ship-wrecked goods on jshore; the theft that is insured against by name, means that which is accompanied by violence (latrocinium) and not simple theft.” To the same effect is Philip on Insurance, p. 258; he says: “There is a, distinction between plunder committed by a superior force and simple larceny without violence. In most cases the insurers are not liable for losses of this latter description, because such losses might be prevented by proper vigilance. It is probably for the purpose of adapting the policy to this distinction that some underwriters have introduced the words assailing thieves instead of thieves and rovers; but these latter *101 words do not in general cover losses by theft, except those which are accompanied by violence or where the theft committed under circumstances in which it could not be prevented.” See also Park on Insurance, 23: Marshall on Insurance, 156, et seq. These authorities fully establish the principle contended for by the insurance company, to wit, that it is labrocinium and not furtum that is insured against under the word “thieves.” In opposition thereto there has been but one authority produced, and that is a dictum of Chancellor Walworth in the case of the Atlantic Insurance Company vs. Storrow and Boyd, 5 Paige’s Rep. 285. The question did not arise in the case, and his opinion is obi-ter and unsupported by authority, and therefore of but little weight against the names produced on the other hand. But it is said that all the authorities produced are dicta, commencing in error and continuing so. To this we have to say, that it is impossible for us at this day to investigate with any thing like accuracy this branch of learning, because we have not the sources from whence it originated, and if we had could not feel ourselves authorized to draw different deductions therefrom, in the absence of adjudicated cases, from those which have been drawn by the able commentators above referred to. So far as we can see, the commercial world has been contented to be governed by them, and so must we.
The judgment of the circuit court will be therefore affirmed.